DISSENTING OPINION
BODLEY, J.,
— It is noted at page 478 of the opinion filed by this court on November 12, 1970, in. this case, 20 Bucks Co. L. Rep. 471 (1970), that the writer of this brief apologia registered his dissent. My disagreement with the conclusion reached by the majority of the court was made known to the opinion writer some months before the opinion was filed; and while my absence from court, due to illness, prevented my pursuing my views at that time, my brethren very graciously noted my dissent. My enforced vacation having ended, I feel obliged to explain my disagreement with the well-reasoned opinion filed for the court.
I do not quarrel with the majority’s discussion of quorums nor with its comments, generally, on the subject of parliamentary procedure. And, although I differ somewhat from the majority as to the applicability of the appellate court cases cited for the law of quorum and majority vote under the novel facts before the court, I do not dissent on that ground.
I simply do not believe that the resolution of the Bristol Township Commissioners’ ridiculous game of cat and mouse should be determined in this quo warranto proceeding.
As we said in our opinion filed in the related case of Fawkes, et al. v. Kline, et al. (the case now before us being that of Kline v. Fawkes) 20 Bucks Co. L. Rep. 87 (1970), at page 90:
*51 . . the Township Commissioners of the Township of Bristol [are] obligated to reorganize themselves as clearly ordered and mandated by the Act of Assembly cited herein and then to proceed to conduct the township business with which they are charged in an orderly, sensible, sincere, intelligent and mature manner. They are charged with this responsibility by the voters and taxpayers of their township. Upon their failure to discharge this responsibility and upon proper petition filed by an appropriate number of taxpayers of the Township this court will discharge its statutory and constitutional obligations.”
We had reference to that portion of Section 701 of The First Class Township Code of June 24, 1931, P. L. 1206, as amended, 53 PS 55701, which states in quite plain language:
“If the township commissioners of any township shall fail to organize within ten days from the time prescribed by this section, the court of quarter sessions, upon petition of ten registered electors, verified by the affidavit of one of the petitioners, shall issue a rule upon the delinquent commissioners to show cause why their seats should not be declared vacant. . . . the court may declare the seats of any delinquent [sic] vacant, and appoint others in their stead to hold office for the respective unexpired terms.”
It seems to me that this provision of the law is effective and more appropriate here than is quo warranto. See, for example, Frackville Borough Council Case, 308 Pa. 579 (1932); Litchfield Township Supervisors, 65 D. & C. 108, 139 (1948).
I hold the further view that when 10 persons elected to important public office behave themselves in such a stubborn, obdurate manner as did these commis *52 sioners, so as to portray each a zealot without an apostate among them, their conduct (while gamering praise in some quarters) suggests that removal from office rather than this court’s paternal (temporary)[1] settlement of their childish quarrels is the desirable form of their punishment and, perhaps, a prophylaxis for them and others.
Stated more simply, I do not believe that these ten township commissioners have yet, more than one year later, reorganized their body as required by law. In my view, the meeting of March 18, 1970, accomplished reorganization no more nearly than did that of the first Monday of January. This court should not, in the words of our earlier opinion,[2] “discharge their responsibility” for the 10 “delinquent” commissioners of Bristol Township.

 Not of record, of course, is the news account carried in the Philadelphia Inquirer on January 24, 1971 of the recent and successful counterthrust by the five Republican commissioners leading to a “re” reorganization, if you will. This by virtue of the fact that the Democratic commissioners were unable to parry the thrust since one of their number was not in attendance at a meeting. Whereas this court decreed on November 12, 1970, that Mr. Kline and his fellows should hold the offices they sought, it would seem that all has been in vain. Those offices are again held by his opponents. Of course, Mr. Kline’s Republican counterpart has a rather tenuous hold on the post since, as Mr. Kline is reported to have intimated, a further reorganization may well occur when the roll call shows the presence of five Democrats and only four Republicans.

 We there referred to this dispute as having been born of a contretemps. Upon sober reflection it would seem that the employment of this word to characterize the bloody political battle, while charitable, was hardly appropriate.